**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
|     JANICE H. SLIGH, | : | |
| | : | |
|         Debtor. | : | Bky. No. 14-14544 ELF |
| | : | |
| JANICE H. SLIGH, | : | |
| | : | |
|         Plaintiff, | : | |
| | : | |
| v. | : | Adv. No. 15-056 |
| | : | |
| NORTH POINT I CONDOMINIUM | : | |
| ASSOCIATION, | : | |
| | : | |
|         Defendant. | : | |

# M E M O R A N D U M

## I. INTRODUCTION

In this bankruptcy case, a condominium association filed a proof of claim asserting that it holds a claim for delinquent condominium assessments that is secured by the debtor's condominium unit. The debtor filed this adversary proceeding seeking a determination that the mortgage lien with priority over the lien held by the condominium association exceed the value of her condominium unit. The debtor's initial goal is to bifurcate the condominium association's claim under 11 U.S.C. §506(a) so that its entire claim is a general unsecured claim. Her ultimate goal is to void the statutory lien that secures the condominium association's claim and to treat its entire claim as a dischargeable, general unsecured claim in her chapter 13 plan.

In response, the condominium association contends that a portion of its lien is granted

-1-

priority over all other liens pursuant to the Pennsylvania Uniform Condominium Act, 68 Pa. C.S.A §3315(b) ("the Pa. U.C.A."), and therefore, to that extent, its claim must be treated as a secured claim and its lien is not avoidable.

For the reasons that follow, I conclude that:

(1) under the Pa. U.C.A., the condominium association's lien is not currently granted priority over the first mortgage lien against the condominium unit;

(2) the association does not hold an allowed secured claim; and

(3) its lien may be avoided upon completion of the debtor's chapter 13 plan.

## II. STATEMENT OF FACTS

The following facts are not in dispute:

1. Janice Sligh ("the Debtor") owns her residence located at 3850 Woodhaven Road, Unit 909 in Philadelphia, Pennsylvania ("the Condo"). (Joint Stip. ¶ 1) (Doc. # 10).

2. The holder of the first mortgage on the Condo is U.S. Bank National Association ("U.S. Bank"), as Trustee for Citigroup Mortgage Loan Trust, Inc., asset-backed pass-through Certificates Series 2006-NC1. (Id. ¶ 4).

3. The balance due on the first mortgage on the Condo is $97,657.47. (Id. ¶ 5).

4. The Condo has a fair market value of $80,000.00. (Id. ¶ 3).

5. The Debtor purchased the Condo subject to the rights, duties and obligations of the Declaration of Condominium of North Point I Condominium Association and the Pa. U.C.A. §§ 3101-3414. (Id. ¶ 2).

6. North Point I Condominium Association ("North Point") filed a proof of claim (Claim No. 1)

in this bankruptcy case, asserting that it holds a secured amount of $1,663.61 and an unsecured claim in the amount of $1,989.96 for a total claim of $3,653.57.  (Id. ¶ 6).

7. North Point's proof of claim is comprised of unpaid assessments of condominium fees, dues, late fees, utility bills, collections costs and attorneys fees.  (Id.).

8.  North Point's prepetition claim is secured by a statutory lien.  (Id. ¶ 7).[1]

9. The Condo has not been sold at a judicial sale nor is any judicial sale pending. (Supplemental Joint Stip. ¶¶ 3-4) (Doc. # 13).

10. There are no pending foreclosure complaints against the Condo.  (Id. ¶ 5).

### III.  PROCEDURAL HISTORY

The Debtor filed a voluntary chapter 13 bankruptcy petition on June 3, 2014.  Her Amended Chapter 13 Plan ("the Plan") was confirmed on March 3, 2015.  The Plan provides that

---

[1] There is a split in the case law on the issue whether a lien held by a condominium association for unpaid assessments is a "statutory lien" or a "security interest" under the Bankruptcy Code.  See, e.g., Young v. 1200 Buena Vista Condominiums, 477 B.R. 594, 600-01 (W.D. Pa. 2012) (after discussing divided case law, holding that the lien is a statutory lien).  In some bankruptcy cases, the classification is significant because if the lien is a security interest, the anti-modification clause in 11 U.S.C. §1322(b)(2), which applies to certain security interests, but not to statutory liens, may be applicable.  If the anti-modification clause is applicable, the debtor may not be able to bifurcate the claim into secured and unsecured components.  See generally Nobelman v. Am. Sav. Bank, 508 U.S. 324 (1993) (anti-modification clause of §1322(b)(2) bars §506(a) bifurcation of partially undersecured mortgage secured only by the debtor's principal residence); In re McDonald, 205 F.3d 606, 611-12 (3d Cir. 2000) (a claim that is entirely unsecured may be bifurcated under 11 U.S.C. §506(a) and is not subject to the anti-modification provision of §1322(b)(2)).

In this contested matter, the parties have stipulated that the subject lien is a statutory lien. (Joint Stip. ¶ 7).  Therefore, it is subject to modification under §1322(b)(2).  I note further that even if North Point's claim is secured by a security interest, not a statutory lien, the claim still would not be subject to the anti-modification clause of §1322(b)(2) under the McDonald holding.

the lien held by North Point will be avoided under the "applicable sections of the Bankruptcy Code" in an adversary proceeding. (Plan ¶ 10) (Bky. No. 14-14544, Doc. # 16).

On February 16, 2015, a few weeks prior to confirmation, the Debtor initiated this adversary proceeding against North Point.[2]  North Point filed an Answer to the Complaint on March 19, 2015. (Doc. # 3).

At a status hearing held on June 25, 2015, the parties agreed to file a joint stipulation of facts in lieu of a trial and simultaneous memoranda of law in support of their respective positions. (See Doc. # 7).  On July 11, 2015, the parties filed the joint stipulation, which they supplemented on September 18, 2015. (Doc. #'s 10, 13).  On September 4, 2015, the parties filed their respective briefs. (Doc. #s 11 &12).  The matter is ready for disposition.

## IV.  DISCUSSION

### A.

In this adversary proceeding, the Debtor seeks a determination under 11 U.S.C. §506(a) that North Point's lien is entirely unsecured because the Condo is subject to the prior U.S. Bank mortgage lien which exceeds the Condo's value; in other words, there is no value in the Condo that supports North Point's lien.  The Plan contemplates that this proceeding will result in the avoidance of North Point's lien.[3]

---

[2]  The Debtor's initial pleading was titled "Motion to Determine the Value and to Modify Claim."  However, it has been treated by North Point and the court as an adversary complaint.

[3]  There is a degree of inconsistency between the Plan and the adversary complaint.  The
(continued...)

Section 506 of the Bankruptcy Code provides in relevant part:

> (a)(1)  An allowed claim of a creditor secured by a lien on property in which the estate has an interest, . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . .  and is an unsecured claim to the extent that the value of such creditor's interest . . .  is less than the amount of such allowed claim.

Section 506(a) generally allows for the bifurcation of an undersecured claim into a secured claim and an unsecured claim if the unpaid balance of a claim exceeds the value of the property securing the claim.  See, e.g., In re Hamilton, 2013 WL 1819546, at *3 (Bankr. E.D. Pa. Apr. 22,

---

[3](...continued)
Plan speaks in terms of lien avoidance while the complaint refers only to valuation and claim bifurcation, nowhere using the term "lien avoidance."  Nonetheless, given the Plan's reference to lien avoidance in an adversary proceeding and the complaint's citation to the Third Circuit's decision in McDonald, I have no doubt that the Debtor is seeking an order avoiding North Point's lien.

In a previous opinion, I discussed the confusing state of the law regarding the statutory source of authority and the proper procedure for avoiding a lien in a reorganization case based on the value (or more accurately, the lack of value) of the property securing a creditor's claim.  See In re Cusato, 485 B.R. 824, 829-31 & n.6 (Bankr. E.D. Pa. 2013).  I will not repeat that discussion here other than to point out that two (2) main approaches have developed since the Supreme Court held in Dewsnup v. Timm, 502 U.S. 410, 417 (1992) that 11 U.S.C. §506(d) does not authorize the avoidance of a lien rendered unsecured by 11 U.S.C. 506(a):

> (1) avoidance through a valuation hearing (either prior to or at the confirmation hearing, see Fed. R. Bankr. P. 3012) combined with express provisions of the chapter 13 plan; or
>
> (2) avoidance in a stand-alone adversary proceeding (ostensibly on the theory that Dewsnup's holding is limited to chapter 7 cases).

In this district, the most common procedure invoked by chapter 13 debtors for avoidance of liens based on the secured property's lack of value is by adversary proceeding, a practice that the Third Circuit may have blessed implicitly in McDonald.  See Cusato, 485 B.R. at 831 n.6.  However, at the conclusion of such adversary proceedings, the parties typically agree to include, or the court inserts, a provision in the lien avoidance order either deferring the effect of the avoidance until completion of the plan or vitiating the order if the case is converted or dismissed prior to completion of the plan.  As a result, in this district, the line between the two (2) approaches described above is blurred and fairly indistinguishable.

2013).

Here, the Condo has a fair market value of $80,000.00 and U.S. Bank has a first priority mortgage lien of $97,657.47 over North Point. Thus, the U.S. Bank lien exceeds the value of the property. Based on these facts, it would appear that North Point's claim should be allowed as an unsecured claim only.

North Point concedes that its claim is largely unsecured, but asserts that a portion of its claim, in the amount of $1,663.61, has lien priority over U.S. Bank's mortgage. To that extent, North Point argues that it holds a secured claim and a lien against the Condo that is not avoidable. North Point bases its lien priority argument on the Pa. U.C.A.

**B.**

The Pa. U.C.A. was enacted in 1980 by Pennsylvania's adoption of the Uniform Condominium Act of 1977 in its uniform version. See 68 Pa. C.S.A., Pt. II, Subpt. B, Refs & Annos. The goal of the uniform legislation was to "unify and modernize the law of condominiums." Id.

The provision of the Pa. U.C.A. most relevant in this proceeding is §3315, which pertains to liens for condominium assessments. The general rule, as set forth in §3315(a), is that a condominium association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The priority of those liens is addressed in subsection (b). Condominium associations enjoy statutory priority over all other liens and encumbrances, except for mortgages recorded before assessment of the

condominium association expenses and real estate taxes.  See 68 Pa. C.S.A. §3315(b)(1).[4]

As a result, in a foreclosure based on a prior mortgage, the condominium association's lien is divested, subject to a limited statutory exception.  The statutory exception is set forth in §3315(b)(2), which provides for what has been referred to as a limited, "super-lien" upon the judicial sale of the condominium unit.

The term "super-lien" is used because the Pa U.C.A. and the version of the Uniform Act adopted in other states, elevate a limited portion of the condominium association lien to senior priority status over the first mortgage holder.  See Grahame K. Wells, The Use of Super-Liens to Promote Cooperation Between Condominium Associations and Lenders, 13 Ann. Rev. Banking L. 477, 478 (1994) ("Super-Liens").  Typically, the super-lien is an amount equal to six (6) months of condominium fees.  Id. at 486.  The balance of the condominium associations's lien remains subordinate to the first mortgage.

---

[4] 68 Pa. C.S.A. §3315(b)(1) provides in relevant part:

> A lien under this section is prior to all other liens and encumbrances on a unit except:
> 
> . . .
> 
> (ii) (A) Mortgages and deeds of trust on the unit securing first mortgage holders and recorded before the due date of the assessment, if the assessment is not payable in installments, or the due date of the unpaid installment, if the assessment is payable in installments.
> 
> (B) Judgments obtained for obligations secured by mortgages or deeds of trust under clause (A).
> 
> (iii) Liens for real estate taxes and other governmental assessments or charges against the unit.

In Pennsylvania, the six (6) month super-lien provision is codified at §3315(b)(2) of the Pa. U.C.A., which provides in relevant part:

> (2) Limited nondivestiture. – The association's lien for assessments shall be divested by judicial sale of the unit:
>
> > (i) As to **unpaid common expense assessments made** under section 3314(b) (relating to assessments for common expenses) **that come due during the six months immediately preceding the date of a judicial sale** of a unit **in an action to enforce collection of a lien** against a unit by a judicial sale, only to the extent that the six months' unpaid assessments are paid out of the proceeds of the sale.

(emphasis added).

The Pennsylvania Comment to the Pa. U.C.A. explains the meaning and effect of this provision as follows:

> If the common expense assessments due the association six months prior to the institution of an action to enforce collection of a lien are not satisfied by a creditor, that portion of the association's lien for common expense assessments is not divested by a judicial sale of the unit. Otherwise, the lien for common expense assessments is divested by such a sale.

68 Pa. C.S.A. §3315 Pa. cmt.[5]

---

[5] The purpose of the limited super priority is to protect the economic viability of condominium associations by "shifting some of the burden for curing condo fee delinquencies to lenders." Super-Liens at 496. The super-lien provisions of the Uniform Act represent a legislative policy choice that the economic viability of condominium associations is in the public interest:

> Delinquencies in condo fees threaten the viability of many condominiums Without funds from condo fees, condominium common associations . . . cannot properly maintain common areas and make needed repairs to the physical structure of the condominium. When condo associations are unable to pay for heating, water, or electricity, utilities cut off these essential services and local officials condemn the entire condominiums.

Super-Liens at 477-78 (1994) (footnotes omitted).

## C.

The issue presented is whether North Point can invoke §3315(b)(2) of the Pa. U.C.A. to establish "super lien" status over U.S. Bank for six (6) months worth of unpaid assessments. If so, North Point holds an allowed secured claim in that amount and that portion of its lien cannot be avoided. In response, the Debtor argues that the requirements under subsection (b)(2) are not present. The Debtor is correct.

Courts interpreting the meaning of a Pennsylvania statute must consider the Statutory Construction Act of 1972, 1 Pa.C.S. §§1501-1991. See Warrantech Consumer Products Servs., Inc. v. Reliance Ins. Co. in Liquidation, 96 A.3d 346, 354 (Pa. 2014). That statute instructs that the object of all interpretation and construction of statutes is to ascertain and effectuate the legislature's intent. 1 Pa.C.S. §1921(a). The best indicator of legislative intent is the plain language of the statute. Warrantech Consumer Prods., 96 A.3d at 354. When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute under the pretext of pursuing its spirit. 1 Pa.C.S. §1921(b). The words and phrases of a statute are construed according to rules of grammar and according to their common and approved usage. 1 Pa.C.S. §1903(a); Commonwealth v. Conklin, 897 A.2d 1168, 1175 (Pa. 2006). Only if the words of the statute are not explicit may a court resort to the rules of statutory construction. 1 Pa.C.S. §1921(c). A statute is ambiguous only if there are at least two (2) reasonable interpretations of the text under review. See, e.g., Warrantech Consumer Prods., 96 A.3d at 354-55; Pilchesky v. Lackawanna Cty., 88 A.3d 954, 965 (Pa. 2014).

Here, the text of the statute states that the condominium association's lien shall be divested except for common expense assessments "that come due during the six months

immediately preceding **the date of a judicial sale**." 68 Pa.C.S. §3315(b) (emphasis added).[6]

There is no ambiguity in this language. Under the plain reading of §3315(b), the judicial sale is the point in time from which the prior six (6) months' worth of unpaid common expense assessments that are entitled to super-lien status is measured. In short, under the statute, a judicial sale is a threshold requirement for super-lien status.

North Point concedes there has not been a judicial sale and that no judicial sale was pending at the time the bankruptcy case or the adversary proceeding was filed. (Supp. Fact Stip. ¶¶ 3-4). Nevertheless, North Point seeks a determination that it holds a "super lien" of $1,663.61 based on an unspecified six (6) month period.[7] It appears that North Point is using the bankruptcy filing as the relevant look back date. However, the bankruptcy filing date is irrelevant; a bankruptcy filing is not a judicial sale. In the absence of a judicial sale, the plain language of §3315(b) dictates that North Point cannot invoke super-lien status. See also In re Phila. Rittenhouse Developer, L.P., 2011 Bankr. LEXIS 1930, at *75-76 (Bankr. E.D. Pa. May 25, 2011) (condominium association denied right to be placed into a separate class in chapter 11 plan because, in absence of judicial sale, no "special statutory rights" – i.e., non-divestiture at a foreclosure sale of a statutory lien for monthly assessments – had arisen).

---

[6] I note that the Pennsylvania Legislature amended the "super lien" provision of the U.C.A. in 2008 to measure the six (6) months from a judicial sale. See 2008 Pa. Legis. Serv. Act 2008-49 (H.B. 2295). No other state has made such modification. The relevant comparable language in the U.C.A. looks to the "[six] months immediately preceding institution of an action to enforce the lien." Uniform Condominium Act, §3-116(b).

[7] The basis of North Point's requested amount also is unclear because the parties stipulated that the current assessment was $214.00 per month for the past twelve (12) years (Supp. Fact Stip. ¶ 1), which would result in a super-lien of $1,284.00, not $1,663.61. ($214 x 6 = $1,284.00).

## V.

For the reasons set forth above, North Point's lien for unpaid condominium assessments lacks super-lien status under the Pa. U.C.A. and is entirely subordinate to U.S. Bank's mortgage lien - a prior mortgage that consumes all of the value of the Condo. Therefore, North Point's claim is entirely unsecured and the Debtor is entitled to an order determining that North Point's lien for unpaid prepetition condominium assessments is void, subject to completion of her chapter 13 plan. See nn.1 & 3, supra.

An appropriate order will be entered.

Date: December 3, 2015

ERIC L. FRANK
CHIEF U.S. BANKRUPTCY JUDGE